## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VISTA HEALTHPLAN, INC.,
300 South Park Road
Hollywood, FL 33021,
on behalf of itself and all others similarly situated,

Civil Action No.

_____

Plaintiff,

**CLASS ACTION COMPLAINT**

v.

**JURY TRIAL DEMANDED**

WARNER CHILCOTT HOLDINGS COMPANY
III, LTD.,
100 Enterprise Drive,
Rockaway, N.J., 07866-2129;

WARNER CHILCOTT CORPORATION,
100 Enterprise Drive,
Rockaway, N.J.
07866-2129;

CASE NUMBER  1:05CV02327

JUDGE: Colleen Kollar-Kotelly

WARNER CHILCOTT (US) INC.
100 Enterprise Drive,
Rockaway, N.J.
07866-2129;

DECK TYPE: Antitrust

DATE STAMP: 12/05/2005

GALEN (CHEMICALS), LTD.
Unit 4 Burton Hall Pk.
Sandyford Industrial Estate
Foxrock, Ireland; and

BARR
PHARMACEUTICALS, INC.,
2 Quaker Road, P.O. Box 2900
Pomona, N.Y. 10970-0519

Defendants.

_____/

Plaintiff, by and through their undersigned attorneys, on its behalf and on behalf of a class of

similarly situated Third Party Payors, as defined below, brings this action against Defendants Warner

Chilcott Holdings Company III, Ltd.; Warner Chilcott Corporation; Warner Chilcott (US), Inc.; Galen (Chemicals) Ltd. (collectively "Warner Chilcott"); and Barr Pharmaceuticals, Inc. ("Barr"), and makes the following allegations:

<u>**NATURE OF THIS ACTION**</u>

1.      This case concerns a horizontal agreement between Warner Chilcott and Barr (collectively, "Defendants") not to compete in the sale of Ovcon 35 ("Ovcon"), an oral contraceptive product used to prevent pregnancy, and its AB-rated generic equivalents. As a result of this restraint of trade, Plaintiff and the class of Third Party Payors defined below have paid supracompetitive prices for Ovcon.

2.      Warner Chilcott is a pharmaceutical company that develops, manufactures, and markets proprietary women's healthcare and dermatology prescriptions pharmaceutical products. Warner Chilcott sells Ovcon, a proprietary prescription pharmaceutical product that contains norethindrone and ethinyl estradiol as its active pharmaceutical ingredients. Warner Chilcott is the exclusive marketer of Ovcon, pursuant to an agreement with Bristol-Myers Squibb Company.

3.      Barr is a pharmaceutical company that develops, manufactures, and markets generic and proprietary prescription pharmaceutical products. Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott's branded Ovcon.

4       On or about March 24, 2004, Warner Chilcott and Barr entered into an option and License Agreement (the "Agreement") not to compete in the sale of branded and generic Ovcon in the United States. Warner Chilcott exercised that option on May 6, 2004.

5.      Prior to the Defendants' Agreement, Barr planned to compete with Warner Chilcott by

selling Barr's lower-priced generic Ovcon once Barr received FDA approval. Both Warner Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher-priced branded Ovcon sales, by capturing approximately 50% of Ovcon's business in the first year alone.

6.    Barr was ready to come to market by the end of 2003 with a cheaper generic version of Ovcon and received FDA approval to do so in April of 2004.

7.    To forestall Barr's competitive threat and to protect its Ovcon sales, Warner Chilcott paid Barr $20 million, pursuant to the Agreement, in exchange for Barr's agreement to refrain from selling generic Ovcon in the United States for five years.

8.    The Agreement denied Plaintiff and other purchasers of Ovcon the benefits of competition and of cheaper generic versions of Ovcon. Defendants' conduct thus led to supracompetitive prices for Ovcon, causing antitrust injury to its purchasers.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. §§ 22 and 26. In addition, this Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d), as amended in 2005, and 28 U.S.C. § 1367.

10.    Venue is proper in this District under 15 U.S.C. § 22, and under 28 U.S.C. §§ 1391(b) and (c), 28 U.S.C. § 1407, because: (1) Warner Chilcott and Barr transact business and are found within this District; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this District.

## PARTIES

11.     Plaintiff Vista Healthplan Inc., a Florida corporation, is an insurance company with its principal place of business in Hollywood, Florida. Vista provides comprehensive health benefits to its members through agreements with participating pharmacies. Vista pays some or all of the costs of prescription drugs dispensed, including Ovcon, to its members.

12.     Defendant Warner Chilcott Holdings Company III, Ltd. is a privately owned, for-profit enterprise organized under the laws of Bermuda, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Warner Chilcott Holdings, Company, III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products, including Ovcon, in the United States.

13.     Defendant Warner Chilcott Corporation is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc.

14.     Defendant Warner Chilcott (US), Inc., is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Defendant Warner Chilcott (US), Inc., is a direct wholly-owned subsidiary of Defendant Warner Chilcott Corporation.

15.     Defendant Galen (Chemicals) Limited ("Galen") is a for-profit enterprise organized under the laws of the Republic of Ireland. Galen is owned or controlled by Warner Chilcott Holdings Company III, Ltd. Galen is the entity that executed the Agreement with Barr.

-4-

16.     Unless otherwise specified, Defendants Warner Chilcott Holdings Company III, Ltd., Warner-Chilcott Corporation, Warner Chilcott (US), Inc., and Galen (Chemicals) Limited are referred to herein collectively as "Warner Chilcott." Warner Chilcott develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products. For the fiscal quarter ending March 31, 2005, Warner Chilcott Holdings Company III, Ltd. reported net revenue of approximately $133.7 million. During that period, sales of Ovcon increased 30.8% to approximately $22.9 million for the quarter. During the twelve-month period ending September 30, 2004, Warner Chilcott's gross profit margin on product net sales was approximately 89%.

17.     Defendant Barr Pharmaceuticals, Inc. ("Barr") is a Delaware corporation with a principal place of business at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr Laboratories, Inc. is a wholly-owned subsidiary of Barr Pharmaceuticals, Inc. Barr develops, manufactures, and markets generic and proprietary prescription pharmaceutical products. In the twelve months ending June 30, 2004, Barr had net revenues of approximately $349 million and net income of approximately $123 million.

## INTERSTATE TRADE AND COMMERCE

18.     During the relevant period, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state and national lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

19     Defendants employed, in furtherance of their unlawful conduct, the United States mails, interstate and international telephone lines, and means of interstate and international travel.

## FACTUAL BACKGROUND

A.    **The Regulatory System Governing Pharmaceuticals in the United States**

20.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355 (j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs, while maintaining incentives for pharmaceutical companies to invest in developing new drugs.

21.    A drug manufacturer must obtain approval from the U.S. Food and Drug Administration ("FDA") before the manufacturer may lawfully introduce a new drug in the United States.

22.    To have one of its new drugs considered for approval, a manufacturer must file a New Drug Application ("NDA") with the FDA. The NDA must contain information demonstrating that the drug is safe and effective for its intended use. 21 U.S.C. § 355(b) (2005).

23.    A drug that is approved through the NDA process may be listed by the FDA as a "Reference Listed Drug" in an FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly referred to as the "Orange Book."

24.    An "AB-rated" generic drug is one that the FDA has determined to be bioequivalent to its corresponding Reference Listed Drug. A generic drug contains the same active pharmaceutical ingredient(s) (or contains the same therapeutic moiety, but may be a different salt, ester, or complex of that moiety) as the corresponding Reference Listed Drug, but may contain other ingredients (such as colors and flavors) that are different. A generic drug is comparable to a Reference Listed Drug in dosage form,

strength, route of administration, quality, performance characteristics, and intended use. 21 U.S.C. § 355(j)(8)(B) (2005).

25.     The Hatch-Waxman Act established a procedure that has often allowed generic drugs to enter the market earlier than had been possible in the past.  The resulting competition benefits purchasers of drugs by leading to cheaper prices.

26.     The Hatch-Waxman Act allows a company to seek FDA approval to market a generic version of a Reference Listed Drug by filing an Abbreviated New Drug Application ("ANDA"), 21 U.S.C. § 355(j) (2005).  An ANDA is generally not required to include preclinical (animal) and clinical (human) data to establish safety and effectiveness.

27.     Because the FDA has already determined that a Reference Listed Drug is safe and effective for use, an ANDA filer may rely on the safety and efficacy data previously provided for a specific Reference Listed Drug, so long as the ANDA filer sufficiently demonstrates to the FDA that its generic drug is bioequivalent to the Reference Listed Drug.

28.     Generic drugs invariably cost substantially less than the branded drugs to which they are bioequivalent.  Typically, the first generic version of a brand name drug is sold at a substantial discount to the brand, followed by increasingly steeper discounts as more generics enter the market.

29.     Generic drugs, after their introduction, promptly capture a significant share of branded sales, causing a significant reduction of the branded drug's unit and dollar sales.

30.     Competition from generic drugs generates large savings on purchases of pharmaceutical products.  A 1998 Congressional Budget Office Report estimates that in 1994 alone, consumers saved between $8-10 billion on prescriptions at retail pharmacies by purchasing generic drugs instead of their

-7-

equivalent brand name drugs.

### B.    Warner Chilcott's Ovcon Products

31.    Ovcon has been available to the general public as a prescription pharmaceutical product since approximately 1976. It is not subject to patent protection.

32.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

33.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interest in Ovcon products. Warner Chilcott entered into a supply agreement with Bristol Myers-Squibb Laboratories Company ("BMSLC"), a wholly subsidiary of BMS. The supply agreement states the terms and conditions associated with the supply of Ovcon product by BMSLC to Warner Chilcott.

34.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and continues to be the exclusive marketer of Ovcon at the present time.

35.    Warner Chilcott's sales of Ovcon have continued to increase. Ovcon's net sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.

36.    Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products, and Ovcon is highly profitable. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

### C.    The Threat of Competition From Barr's Generic Ovcon

37.    In September of 2001, Barr filed ANDAs with the FDA for approval to market AB-rated generic versions of Ovcon.

38.    In January of 2003, Barr publicly announced its intention to launch a generic version of

Ovcon by the end of 2003.

39.     Barr planned to offer its generic version of Ovcon for sale at a price approximately 30% less than the price charged by Warner Chilcott.

40.     Barr projected that its generic Ovcon would capture approximately 50% of Warner Chilcott's branded Ovcon sales within the first year of introduction.

41.     Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30% less than the price Warner Chilcott charges for branded Ovcon.

42.     Warner Chilcott projected that generic Ovcon would capture at least 50% of Ovcon's new prescriptions within the first year of introduction. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three-year period.

43.     Warner Chilcott's first attempt to combat the threat poised by the entry of a generic version of Ovcon was the development of a line extension to Ovcon. Specifically, its strategy was to replace Ovcon with a chewable form of Ovcon prior to the generic entry of Ovcon.

44.     Warner Chilcott planned to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon. Warner Chilcott planned to engage in various practices that would ultimately result in the replacement of prescriptions for (and supply of) non-chewable Ovcon with Chewable Ovcon, despite the fact that the change to a chewable form of Ovcon brought no benefit to patients or purchasers of the drug, but was only sought by Warner Chilcott to preserve its monopoly profits on Ovcon. Prescriptions for Ovcon Chewable would not be able to be filled at pharmacies with a generic Ovcon product (absent express approval of the patients's physician) because any generic verison of Ovcon would

52.     On April 22, 2004, the FDA approved Barr's ANDAs to produce and market generic Ovcon.

53.     On April 23, 2004, Barr publicly announced its intention to begin marketing its generic version of Ovcon in the event that Warner Chilcott chose not to exercise its option under the Agreement.

54.     On May 6, 2004, Warner Chilcott exercised its option under the Agreement. Pursuant to the terms of the Agreement, Warner Chilcott paid Barr $19 million in exchange for Barr's promise not to complete with Warner Chilcott by introducing a generic version of Ovcon.

55.     As a consequence of the anticompetitive Agreement, no generic version of Ovcon was ever launched, and Barr has agreed not to launch a generic version of Ovcon until at least May 2009.

56.     In the absence of the anticompetitive Agreement, Barr would have begun marketing its product shortly after obtaining FDA approval.

57.     In the absence of the competitive threat that Barr would have provided in a free marketplace, purchasers of Ovcon were required to continue purchasing the brand-name Ovcon product when a less expensive generic version would have otherwise been available.

58.     If Barr had introduced its generic product into the market, the prices paid by purchasers for Ovcon products would have decreased rapidly and substantially.

59.     Barr has abided by its agreement not to sell generic Ovcon in the United States. No company, other than Barr, has received FDA approval for a generic version of Ovcon.

60.     The Agreement between Warner Chilcott and Barr destroyed the competition that is intrinsic to our market-based company.

## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and the following Class:

All Third Party Payors in the United States who purchased, reimbursed and/or paid for Ovcon at any time from April 22, 2004 through the present and continuing until the effects of Defendants' anticompetitive conduct have ceased (the "Class Period"). "Third-Party Payor" shall mean any non-governmental entity that is: (i) a party to a contract, issuer of a policy, or sponsor of a plan, which contract, policy or plan provides prescription drug coverage to natural persons; and (ii) is also at risk, pursuant to such contract, policy or plan, to provide prescription drug benefits, or to pay or reimburse all or part of the cost of prescription drugs dispensed to natural persons covered by such contract, policy or plan. Excluded from the class are Defendants, their parents, employees, subsidiaries and affiliates, and all government entities (the "Class").

62.    The Class is so numerous that joinder of all members is impracticable, Plaintiff believes that the Class numbers in the thousands.

63.    There are questions of law or fact common to the Class, including:

a.    whether Defendants entered into an agreement not to compete in the sales of Ovcon and its generic equivalents;

b.    whether Defendants' agreement not to compete was unlawful;

c.    whether Defendants' unlawful conduct caused Plaintiff and the other members of the Class to pay more for Ovcon than they would have paid absent Defendants' conduct; and

d.    whether Defendants' conduct caused plaintiff and the Class damages, and if so, the appropriate measure of damages.

64.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting only individual members.

65.    Plaintiff's claims are typical of the claims of the Class because all Class members, including Plaintiff, suffered antitrust injury in the same way as a result of Defendants' conduct, and the claims of each Class member arise out of the same nucleus of operative facts and are based on the same legal theories.

66.    Plaintiff will fairly and adequately represent and protect the interest of the Class. Plaintiff have retained counsel experienced in class action and antitrust litigation, and Plaintiff has no interest in this litigation that is adverse to, or in conflict with, the interest of the other members of the Class.

67.    A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty that will be encountered in the management of the claims advanced by the Class that would preclude class certification.

## ANTICOMPETITIVE EFFECTS OF DEFENDANTS' ILLEGAL CONDUCT

68.    Warner Chilcott and Barr's Agreement not to compete is a naked restraint of trade. On its face, it eliminates competition, and it has no plausible procompetitive justification.

69.    The Agreement is anticompetitive pursuant to every relevant legal analysis.

70.    Defendants' conduct had the purpose and effect of unreasonably and illegally restraining trade and preventing competition.

71.    Defendants' horizontal agreement not to compete is not ancillary to any procompetitive undertaking. Preventing competition from Barr's generic Ovcon for five (5) years is not subordinate to any procompetitive undertaking, but is rather the primary purpose of the Agreement. Preventing competition from Barr's generic Ovcon for five (5) years is not reasonably necessary to accomplish any undertaking that enhances competition.

-13-

72.     Defendants could have accomplished any of the purported competitive benefits of the Agreement by other less restrictive means that would not have destroyed competition.

73.     As a direct and proximate result of the illegal conduct alleged in this complaint, Plaintiff and other members of the Class were and are still forced to pay more for Ovcon than they otherwise would have paid. Defendants' unlawful conduct deprived Plaintiff of the benefits of competition that the antitrust laws were designed to secure.

## COUNT I

## (FOR INJUNCTIVE RELIEF UNDER SECTION 16 OF THE CLAYTON ACT FOR DEFENDANTS' VIOLATION OF SECTION 1 OF THE SHERMAN ACT)

74.     Plaintiff repeats and realleges the preceding paragraphs as though set forth herein.

75.     As alleged above, Defendants knowingly and willfully engaged in a course of conduct to violate Section 1 of the Sherman Act.

76.     Plaintiff and the other members of the Class have been injured in their business or property by reason of Defendants' antitrust violations alleged herein. The injury is the type of injury antitrust laws were designed to prevent, and the injury flows from Decedents' unlawful conduct. Plaintiff and members of the Class are threatened with further injuries as a result of Defendants' continuing scheme, as alleged herein.

77.     Plaintiff and the Class seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct for the anticompetitive market effects caused by the unlawful conduct of Defendants, and other relief so as to assure that similar anticompetitive conduct does not occur in the future.

-14-

## COUNT II

### (FOR COMPENSATORY AND MULTIPLE DAMAGES UNDER THE ANTITRUST AND/OR CONSUMER PROTECTION STATUTES OF THE INDIRECT PURCHASER STATES)

78.    Plaintiff repeats and realleges the preceding paragraphs as though set forth herein.

79.    Defendants' conduct described herein constitutes an unlawful restraint of trade, as well as prohibited deceptive acts and practices and unconscionable conduct under the antitrust and/or unfair and deceptive trade practices acts of the Indirect Purchaser States, as follows:

(a)    Arizona: The aforementioned practices by Defendants were and are in violation of the Arizona Uniform States Antitrust Act, Ariz. Rev. Stat. §§ 44-1401, *et seq.*, and the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*, and the Constitution of the State of Arizona, Article 14, §15;

(b)    California: The aforementioned practices by Defendants were and are in violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et seq.*, and the California Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(c)    District of Columbia: The aforementioned practices by Defendants were and are in violation of the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, *et seq.*;

(d)    Florida: The aforementioned practices by Defendants were and are in violation of the Florida Antitrust Act, Fla. Stat. Ann. §§542.15, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.*;

(e)    Iowa: The aforementioned practices by Defendants were and are in violation of the

-15-

Iowa Competition Law, Iowa Code §§ 553.4, 553.5 (1997);

      (f)    Kansas: The aforementioned practices by Defendants were and are in violation of the Kansas Monopolies and Unfair Trade Act, Kan. Stat. Ann.§§ 50-101, *et seq*., and the Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-623 *et seq*.;

      (g)    Louisiana: The aforementioned practices by Defendants were and are in violation of the Louisiana Monopolies Law, La.Rev.Stat.Ann. §§ 51:121, *et seq*., and the Louisiana Unfair Trade Practices and Consumer Protection Law, La.Rev. Stat. Ann. §§51:1401, *et. seq*.;

      (h)    Maine: The aforementioned practices by Defendants were and are in violation of the Maine Monopolies and Profiteering Statute, Me. Rev. Stat. Ann. tit. 10, §§ 1101, *et seq*., and the Maine Unfair Trade Practices Act, Me. Rev. Stat.Ann. tit. 5, §§ 205-A, *et seq*.;

      (i)    Massachusetts: The aforementioned practices by Defendants were and are in violation of the Massachusetts Antitrust Act, Mass. Gen. Laws, ch. 93, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A;

      (j)    Michigan: The aforementioned practices by Defendants were and are in violation of the Michigan Antitrust Reform Act, Mich, Comp. Laws §§ 445.771, *et seq*., and the Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

      (k)    Minnesota: The aforementioned practices by Defendants were and are in violation of the Minnesota Antitrust Law of 1971, Minn.Stat. §§ 325D.49, *et seq*., and the Minnesota Consumer Fraud Act, Minn. Stat §§ 325F.67, *et seq*.;

      (l)    Mississippi: The aforementioned practices by Defendants were and are in violation of Miss.Code Ann. §§75-21-1, *et seq*.;

(m)  Nebraska: The aforementioned practices by Defendants were and are in violation of Ne.Rev.Stat. §§ 59-801, *et seq.*;

(n)  Nevada: The aforementioned practices by Defendants were and are in violation of the Nevada Unfair Trade Practices Act, Nev. Rev. Stat. §§ 598A.010, *et seq.*, and the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;

(o)  New Jersey: The aforementioned practices by Defendants were and are in violation of the New Jersey Antitrust Act, N.J. Stat.Ann. §§56:9-1, *et seq.*, and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*;

(p)  New Mexico: The aforementioned practices by Defendants were and are in violation of the New Mexico Antitrust Act, N.M. Stat. Ann. §§ 57-1-1, et sq., and the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*;

(q)  New York: The aforementioned practices by Defendants were and are in violation of the Donnelly Act, N.Y. Gen. Bus. Law §§ 340, *et seq.*, and the New York Deceptive Acts and Practices Act, N.Y. Gen bus. Law §§ 349, *et seq.*;

(r)  North Carolina: The aforementioned practices by Defendants were and are in violation of North Carolina's antitrust and unfair competition law, N.C. Gen. Stat. §§ 75-1, *et seq.*;

(s)  North Dakota: The aforementioned practices by Defendants were and are in violation of the North Dakota Antitrust Act, N.D. Cent. Code §§ 51-08.1-01, *et seq.* And the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.*;

(t)  South Dakota: The aforementioned practices of Defendants were and are in violation of South Dakota's antitrust law, S.D. Codified Laws §§ 37-1-3, *et seq.*, and deceptive trade

-17-

practices and consumer protection law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

      (u)    <u>Tennessee</u>: The aforementioned practices of Defendants were and are in violation the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101, *et seq.* And the Consumer Protection act, Tenn. Code Ann. §§ 47-18-101, *et seq.*,

      (v)    <u>Vermont</u>: The aforementioned practices of Defendants were and are in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, § § 2451, *et seq.*;

      (w)    <u>West Virginia</u>: The aforementioned practices by Defendants were and are in violation of the est Virginia Antitrust Act, W.Va. Code §§ 47-18-1, et sq., and the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101, *et seq.*; and

      (x)    <u>Wisconsin</u>: The aforementioned practices by Defendants were and are in violation of the Wisconsin Antitrust Act, Wis. Stat. §§ 133.01, *et seq.*, and the Wisconsin Trade Practices Act, Wis. Stat. §§ 100.20, *et seq.*

    80.    As a result of the conduct described above, Plaintiff and the Class have sustained and will continue to sustain substantial losses and damage to their businesses and property in the form of, *inter alia*, being deprived of the ability to purchase less expensive, generic versions of Ovcon, and paying prices for Ovcon products that were higher than they would have been but for Defendants' improper and unlawful actions. The full amount of such damages are presently unknown and will be determined after discovery and upon proof at trial.

    81.    Plaintiff and the Class seek damages, multiple damages, treble damages, and other damages as permitted by state law, for their injuries caused by these violations pursuant to these statutes.

## COUNT III

## (FOR RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS)

82.    Plaintiff repeats and realleges the preceding paragraphs as though set forth herein.

83.    As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched.  Defendants have been unjustly enriched, to the detriment of Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits on their sale of Ovcon products, as well as any and all payments made to Barr by the other Defendants to keep generic Ovcon off the market.  Defendants have benefitted from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of their ill-gotten gains resulting from the overpayments for Ovcon products made by Plaintiff and the Class.

84.    Plaintiff and members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from Defendants' unlawful, unjust and inequitable conduct.  Plaintiff and the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the Class members may make claims on a *pro rata* basis.

## COUNT IV

## (UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF ALL STATES' CONSUMER PROTECTION ACTS)

85.    Plaintiff repeats and realleges the preceding paragraphs  as though set forth herein.

86.    Alternatively, Defendants' actions, as alleged herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes listed below:

-19-

(a)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, et. seq.;

(b)  Defendants have engaged in unfair competition or unfair or deceptive act or practices in violation of Alaska Stat. Code § 45.50.471, *et seq.*;

(c)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. §44-1522, *et seq.*

(d)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code §4-88-101, et. seq.;

(e)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*;

(f)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

(g)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

(h)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

(i)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, *et seq.*;

(j)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

(k)  Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of Ga. Stat. § 10-1-392, *et seq.*;

(l)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

(m)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

(n)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

(o)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

(p)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1b, *et seq.*;

(q)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

(r)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

(s)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

(t)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

(u)    Defendants have engaged in unfair competition or unfair or deceptive acts or

-21-

practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

      (v)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

      (w)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

      (x)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

      (y)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

      (z)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

      (aa)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

      (bb)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

      (cc)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

      (dd)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

      (ee)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

(ff)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

(gg)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

(hh)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

(ii)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

(jj)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

(kk)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

(ll)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

(mm)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

(nn)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

(oo)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

(pp)    Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

(qq)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

(rr)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

(ss)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-1, *et seq.*;

(tt)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 245, *et seq.*;

(uu)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

(vv)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code. § 19.86.010, *et seq.*;

(ww)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

(xx)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and

(yy)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*;

87.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual economic damage by paying

supracompetitive prices for branded Ovcon instead of the equally efficacious generic version.

**WHEREFORE**, Plaintiff prays that the Court:

(a)      Determine that this action may be maintained as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; and declare Plaintiff as a Class representative;

(b)      Declare the conduct alleged herein to be in violation of Section 1 of the Sherman Act, of the statutes of the Indirect Purchaser States set forth above, and the common law of unjust enrichment;

(c)      Award Plaintiff and each member of the Class damages and, where applicable, treble, multiple, and other damages, including interest;

(d)      Award Plaintiff and each member of the Class the amounts by which Defendants have been unjustly enriched;

(e)      enjoin Defendants from continuing the illegal activities alleged herein;

(f)      Award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees and expenses as provided by law; and

(g)      Award Plaintiff and the Class such other and further as the Court deems just and necessary.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all of the claims

asserted in this Complaint so triable.

Dated: December 5, 2005

By _____

L. Kendall Satterfield (Bar # 393953)
Michael G. McLellan (Bar # 489217)
FINKELSTEIN, THOMPSON & LOUGHRAN
1050 30th Street, N.W.
Washington, D.C. 20007

Kevin B. Love
HANZMAN & CRIDEN, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, Florida 33134
Telephone: (305) 357-9000
Facsimile: (305) 357-9050

Jay Shapiro
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
150 W. Flagler Street, Suite 2200
Miami, Florida 33130
Phone: (305) 789-3200
Facsimile (305) 789-3229

Marc A. Wites
WITES & KAPETAN, P.A.
4400 North Federal Highway
Lighthouse Point, FL 33064
Phone: (954) 570-8989
Facsimile (954) 428-3929

*Attorneys for Plaintiff*

-26-