## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

JABO'S PHARMACY, INC., on behalf of )
itself and all others similarly situated in the )
States of Tennessee, Alabama, Arizona, )
Florida, Hawaii, Iowa, Kansas, Maine, )
Massachusetts, Michigan, Minnesota, )
Mississippi, Nebraska, Nevada, New )
Mexico, New York, North Carolina, North )
Dakota, South Carolina, South Dakota, )   Case No.:
Vermont, West Virginia, Wisconsin and the )
District of Columbia, )

       Plaintiffs, )   **CLASS ACTION**

vs. )

WARNER CHILCOTT HOLDINGS )
COMPANY III, LTD.; WARNER )
CHILCOTT CORPORATION; WARNER )
CHILCOTT (US) INC.; GALEN )
(CHEMICALS), LTD.; and BARR )
PHARMACEUTICALS, INC., )

       Defendants. )
        )
        )
        )
        )

---

## CLASS ACTION COMPLAINT

---

Plaintiff, by and through its undersigned attorneys, brings this action on its own behalf

and all others similarly situated in the States of Tennessee, Alabama, Arizona, Florida, Hawaii,

Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New

Mexico, New York, North Carolina, North Dakota, South Carolina, South Dakota, Vermont,

West Virginia, Wisconsin and the District of Columbia (the "Class Jurisdictions") for violation

of the laws of the Class Jurisdictions, and for violation of the antitrust laws of the Class

Jurisdictions against the above-named defendants, demanding a trial by jury. For its Complaint

against defendants, plaintiff alleges the following:

## I. NATURE OF THIS ACTION

1.      This case concerns a horizontal agreement between Warner Chilcott and Barr

(collectively, "Defendants") not to compete in the sales of Ovcon 35 ("Ovcon"), an oral

contraceptive product used to prevent pregnancy, and its AB-rated generic equivalents. As a

result of this restraint of trade, Plaintiff and the class defined below have paid supracompetitive

prices for Ovcon.

2.      Warner Chilcott is a pharmaceutical company that develops, manufactures, and

markets proprietary women's healthcare and dermatology prescription pharmaceutical products.

Warner Chilcott sells Ovcon, a proprietary prescription pharmaceutical product that contains

norethindrone and ethinyl estradiol as its active pharmaceutical ingredients. Warner Chilcott is

the exclusive marketer of Ovcon, pursuant to an agreement with Bristol-Myers Squibb Company.

3.      Barr is a pharmaceutical company that develops, manufactures, and markets

generic and proprietary prescription pharmaceutical products. Barr is the only company

approved by the United States Food and Drug Administration ("FDA") to sell a generic version

of Ovcon in competition with Warner Chilcott's branded Ovcon.

4.      On or about March 24, 2004, Warner Chilcott and Barr entered into an Option and

License Agreement (the "Agreement") not to compete in the sale of brand and generic Ovcon in

the United States. Warner Chilcott exercised that option on May 6, 2004.

5.      Prior to the Defendants' Agreement, Barr planned to compete with Warner

Chilcott by selling Barr's lower-priced generic Ovcon once Barr received FDA approval. Both

Warner Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher-priced brand Ovcon sales, by capturing approximately 50% of Ovcon's business in the first year alone.

6.      Barr was ready to come to market by the end of 2003 with a cheaper generic version of Ovcon and received FDA approval to do so in April, 2004.

7.      To forestall Barr's competitive threat and to protect its Ovcon sales, Warner Chilcott paid Barr $20 million, pursuant to the Agreement, in exchange for Barr's agreement to refrain from selling generic Ovcon in the United States for five years.

8.      The Agreement denied Plaintiff and Class members the benefits of competition and of cheaper generic versions of Ovcon.  Defendants' conduct, thus, led to supracompetitive prices for Ovcon, causing antitrust injury to its purchasers.

9.      Plaintiff brings this action on behalf of itself and others similarly situated in the State of Tennessee for violation of Tenn. Code Ann. §§ 47-25-101 *et seq.* (the Tennessee Trade Practices Act).  Plaintiff also brings this action on behalf of those similarly situated in the following jurisdictions pursuant to the relevant statutes, including: Alabama [Ala. Code §§ 6-5-60, *et seq.* (antitrust)]; Arizona [Ariz. Rev. Stat. §§ 44-1401, *et seq.* (antitrust)]; Florida [Fla. Stat. Ann. §§ 501.204(1), *et seq.*]; Hawaii [Hawaii Rev. Stat. §§ 480-1, *et seq.* (antitrust)]; Iowa [Iowa Code Ch. 553, §§ 553.1, *et seq.* (antitrust)]; Kansas [Kan. Stat. Ann. §§ 50-101, *et seq.* and §§ 50-801 (antitrust)]; Maine [Me. Rev. Stat. Ann. tit. 10, §§ 1101 and 1104 (antitrust)]; Massachusetts [Mass. Gen. L. c. 93A]; Michigan [Mich. Comp. Laws Ann. §§ 445.771, *et seq.* (antitrust)]; Minnesota [Minn. Stat. Ann. §§ 325D.49-325D.66 (antitrust)]; Mississippi [Miss. Code Ann. §§ 75-24-1, *et seq.* (antitrust)]; Nebraska [Nebraska Rev. Stat. §§ 59-801 *et seq* (antitrust)]; Nevada [Nev. Rev. Stat. Chapter 598A.010, *et seq.*]; North Carolina [N.C. Gen. Stat.

§§ 75-1, *et seq.*) (antitrust)]; New Mexico [N.M. Stat. Ann. §§ 57-1-3 (antitrust)]; New York

[N.Y. Gen. Bus. Law §§ 340 *et seq.*]; North Carolina [N.C. Gen. Stat. §§ 75-1, 75-1.1, 75-2

(antitrust)]; North Dakota [N.D. Cent. Code §§ 51-08.1, *et seq.* (antitrust)]; South Carolina [S.C.

Code Ann. §§ 39-3-10 (antitrust)]; South Dakota [S.D. Codified Laws Ann. §§ 37-1-14.3, 37-1-

33 (antitrust)]; Vermont [Section 2451, *et seq.* and section 2465 of Vt. Stat. Ann., tit. 9]; West

Virginia [W. Va. Code §§ 47-18-1, *et seq.* (antitrust)]; Wisconsin [Wis. Stat. Ann. §§ 133.04,

133.16 & 133.18 (antitrust)]; and the District of Columbia [D.C. Code. Ann. §§ 28-4501, *et seq.*

(antitrust)] (the "Class Jurisdictions"). Plaintiff requests that the foregoing laws of each of the

foregoing States be applied in this case.

## II. JURISDICTION AND VENUE

10.     This Court has diversity subject-matter jurisdiction over this class action pursuant

to the Class Action Fairness Act of 2005,which, *inter alia,* amends 28 U.S.C. §1332 to add a new

subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a

class of plaintiffs is a citizen of a State different from any defendant" and the aggregated amount

in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28

U.S.C. 1332(d)(2) and (6). This Court also has jurisdiction under 28 U.S.C. §1332(d) because

"one or more members of the class is a citizen of a state within the United States and one or more

of the Defendants is a citizen or subject of a foreign state." The Court also has personal

jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court and

Defendants systematically and continually conduct business here and throughout the United

States, including the State of Tennessee, including marketing, advertising, and sales directed to

residents of every Class Jurisdiction, including Tennessee residents.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because Defendants as corporations are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction."

## III. PARTIES

12.     Plaintiff Jabo's Pharmacy, Inc. is a pharmacy in Newport, Cocke County, Tennessee. During the period of time covered by this Complaint, Plaintiff purchased Ovcon directly and/or indirectly from one or more of the named Defendants and suffered antitrust injury as a result of Defendants' anticompetitive conduct.

13.     Defendant Warner Chilcott Holdings Company III, Ltd., is a privately-owned, for-profit enterprise organized under the laws of Bermuda, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products, including Ovcon, in the United States.

14.     Defendant Warner Chilcott Corporation is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc.

15.     Defendant Warner Chilcott (US), Inc., is a for-profit Delaware corporation with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey, 07866-2129. Defendant Warner Chilcott (US), Inc., is a direct wholly-owned subsidiary of Defendant Warner Chilcott Corporation.

16.    Defendant Galen (Chemicals) Limited ("Galen") is a for-profit enterprise organized under the laws of the Republic of Ireland. Galen is owned or controlled by Warner Chilcott Holdings Company III, Ltd. Galen is the entity that executed the Agreement with Barr.

17.    Unless otherwise specified, Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US), Inc., and Galen (Chemicals) Limited are referred to herein collectively as "Warner Chilcott." Warner Chilcott develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products. For the fiscal quarter ending March 31, 2005, Warner Chilcott Holdings Company III, Ltd. reported net revenue of approximately $133.7 million. During that period, sales of Ovcon increased 30.8% to approximately $22,900,000 for the quarter. During the twelve month period ending September 30, 2004, Warner Chilcott's gross profit margin on product net sales was approximately 89%.

18.    Defendant Barr Pharmaceuticals, Inc. ("Barr") is a Delaware corporation with a principal place of business at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr Laboratories, Inc. is a wholly-owned subsidiary of Barr Pharmaceuticals, Inc. Barr develops, manufactures, and markets generic and proprietary prescription pharmaceutical products. In the twelve months ending June 30, 2004, Barr had net revenues of approximately $349 million and net income of approximately $123 million.

## IV. FACTUAL BACKGROUND

### A.    The Regulatory System Governing Pharmaceuticals in the United States

19.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003,

codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs, while maintaining incentives for pharmaceutical companies to invest in developing new drugs.

20.    A drug manufacturer must obtain approval from the U.S. Food and Drug Administration ("FDA") before the manufacturer may lawfully introduce a new drug in the United States.

21.    To have one of its new drugs considered for approval, a manufacturer must file a New Drug Application ("NDA") with the FDA.  The NDA must contain information demonstrating that the drug is safe and effective for its intended use.  21 U.S.C. § 355(b) (2005).

22.    A drug that is approved through the NDA process may be listed by the FDA as a "Reference Listed Drug" in an FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly referred to as the "Orange Book."

23.    An "AB-rated" generic drug is one that the FDA has determined to be bioequivalent to its corresponding Reference Listed Drug.  A generic drug contains the same active pharmaceutical ingredient(s) (or contains the same therapeutic moiety, but may be a different salt, ester, or complex of that moiety) as the corresponding Reference Listed Drug, but may contain other ingredients (such as colors and flavors) that are different.  A generic drug is comparable to a Reference Listed Drug in dosage form, strength, route of administration, quality, performance characteristics, and intended use.  21 U.S.C. § 355(j)(8)(B) (2005).

24.    The Hatch-Waxman Act established a procedure that has often allowed generic drugs to enter the market earlier than had been possible in the past.  The resulting competition benefits purchasers of drugs by leading to cheaper prices.

25.    The Hatch-Waxman Act allows a company to seek FDA approval to market a generic version of a Reference Listed Drug by filing an Abbreviated New Drug Application ("ANDA"). 21 U.S.C. § 355(j) (2005). An ANDA is generally not required to include preclinical (animal) and clinical (human) data to establish safety and effectiveness.

26.    Because the FDA has already determined that a Reference Listed Drug is safe and effective for use, an ANDA filer may rely on the safety and efficacy data previously provided for a specific Reference Listed Drug, so long as the ANDA filer sufficiently demonstrates to the FDA that its generic drug is bioequivalent to the Reference Listed Drug.

27.    Generic drugs invariably cost substantially less than the branded drugs to which they are bioequivalent. Typically, the first generic version of a brand name drug is sold at a substantial discount to the brand, followed by increasingly steeper discounts as more generics enter the market.

28.    Generic drugs, after their introduction, promptly capture a significant share of their branded counterparts' sales, causing a significant reduction of the branded drug's unit and dollar sales.

29.    Competition from generic drugs generates large savings on purchases of pharmaceutical products. A 1998 Congressional Budget Office Report estimates that in 1994 alone, consumers saved $8-10 billion on prescriptions at retail pharmacies by purchasing generic drugs instead of their equivalent brand name drugs.

**B.    Warner Chilcott's Ovcon Products**

30.    Ovcon has been available to the general public as a prescription pharmaceutical product since approximately 1976. It is not subject to patent protection.

31.    Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS")
manufactured, distributed, and marketed Ovcon in the United States.

32.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title,
and interest in Ovcon products.  Warner Chilcott entered into a supply agreement with Bristol
Myers-Squibb Laboratories Company ("BMSLC"), a wholly owned subsidiary of BMS.  The
supply agreement states the terms and conditions associated with the supply of Ovcon product by
BMSLC to Warner Chilcott.

33.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and
continues to be the exclusive marketer of Ovcon at the present time.

34.    Warner Chilcott's sales of Ovcon have continued to increase.  Ovcon's net sales
have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.

35.    Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing
products, and Ovcon is highly profitable.  For the twelve months ending September 30, 2004,
Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**C.    The Threat of Competition From Barr's Generic Ovcon**

36.    In September of 2001, Barr filed ANDAs with the FDA for approval to market
AB-rated generic versions of Ovcon.

37.    In January of 2003, Barr publicly announced its intention to launch a generic
version of Ovcon by the end of 2003.

38.    Barr planned to offer its generic version of Ovcon for sale at a price
approximately 30% less than the price charged by Warner Chilcott.

39.    Barr projected that its generic Ovcon would capture approximately 50% of
Warner Chilcott's branded Ovcon sales within the first year of introduction.

40.    Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30% less than the price Warner Chilcott charges for branded Ovcon.

41.    Warner Chilcott projected that generic Ovcon would capture at least 50% of Ovcon's new prescriptions within the first year of introduction. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

42.    Warner Chilcott's first attempt to combat the threat posed by the entry of a generic version of Ovcon was the development of a line extension to Ovcon. Specifically, its strategy was to replace Ovcon with a chewable form of Ovcon prior to the generic entry of Ovcon.

43.    Warner Chilcott planned to convert its Ovcon customers to Ovcon Chewable and to stop selling Ovcon. Warner Chilcott planned to engage in various practices that would ultimately result in the replacement of prescriptions for (and supply of) non-chewable Ovcon with chewable Ovcon, despite the fact that the change to a chewable form of Ovcon brought no benefit to patients or purchasers of the drug but was only sought by Warner Chilcott to preserve its monopoly profits on Ovcon. Prescriptions for Ovcon Chewable would not be able to be filled at pharmacies with a generic Ovcon product (absent express approval of the patient's physician) because any generic version of Ovcon would not be AB-rated to Ovcon Chewable.

44.    By mid-2003, however, Warner Chilcott's "switch" strategy to protect its Ovcon revenues was in jeapordy. Barr's generic Ovcon entry appeared imminent, and Ovcon Chewable had not obtained FDA approval.

45.    In May of 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

## V. DEFENDANTS' HORIZONTAL AGREEMENT NOT TO COMPETE

46.     By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

47.     In August of 2003, Warner Chilcott and Barr engaged in discussions regarding an arrangement by which Barr would refrain from selling its generic Ovcon product in the United States.

48.     On September 10, 2003, Warner Chilcott and Barr signed a letter of intent to enter into an agreement that gave Warner Chilcott the exclusive option to market all products produced pursuant to Barr's ANDAs for generic versions of Ovcon.  Pursuant to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.

49.     On March 24, 2004, Defendants signed the Agreement, as contemplated by their letter of intent, and Warner Chilcott paid Barr $1,000,000.

50.     Under the Agreement, within 45 days after FDA approval of Barr's Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee for five years.

51.     On April 22, 2004, the FDA approved Barr's ANDAs to produce and market generic Ovcon.

52.     On April 23, 2004, Barr publicly announced its intention to begin marketing its generic version of Ovcon in the event that Warner Chilcott chose not to exercise its option under the Agreement.

53.     On May 6, 2004, Warner Chilcott exercised its option under the Agreement.

Pursuant to the terms of the Agreement, Warner Chilcott paid Barr $19,000,000 in exchange for

Barr's promise not to compete with Warner Chilcott by introducing a generic version of Ovcon.

54.    As a consequence of the anticompetitive Agreement, no generic version of Ovcon

was ever launched, and Barr has agreed not to launch a generic version of Ovcon until at least

May, 2009.

55.    In the absence of the anticompetitive Agreement, Barr would have begun

marketing its product shortly after obtaining FDA approval.

56.    In the absence of the competitive threat that Barr would have provided in a free

marketplace, purchasers of Ovcon were required to continue purchasing the brand-name Ovcon

product when a less expensive generic version would have otherwise been available.

57.    If Barr had introduced its generic product into the market, the prices paid by

purchasers for Ovcon products would have decreased rapidly and substantially.

58.    Barr has abided by its agreement not to sell generic Ovcon in the United States.

No company, other than Barr, has received FDA approval for a generic version of Ovcon.

59.    The Agreement between Warner Chilcott and Barr destroyed the competition that

is intrinsic to our market-based economy.

## VI. CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil

Procedure, on behalf of itself and the following class:

> All persons and entities within the Class Jurisdictions who
> purchased Ovcon indirectly from Defendants or their subsidiaries
> at any time from April 22, 2004 through the present and continuing
> until the effects of Defendants' anticompetitive conduct have
> ceased (the "Class Period"). Excluded from the class are
> Defendants, their parents, employees, subsidiaries and affiliates,
> and all government entities (the "Class").

61.    The Class is so numerous that joinder of all members is impracticable. Plaintiffs believe that the Class numbers one hundred or more.

62.    There are questions of law or fact common to the Class, including:

       a.    whether Defendants entered into an agreement not to compete in the sales of Ovcon and its generic equivalents;

       b.    whether Defendants' agreement not to compete was unlawful;

       c.    whether Defendants' unlawful conduct caused Plaintiffs and the other members of the Class to pay more for Ovcon than they would have paid absent Defendants' conduct; and

       d.    whether Defendants' conduct caused antitrust injury to the business or property of their direct purchaser customers and, if so, the appropriate measure of damages.

63.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting only individual members.

64.    Plaintiffs' claims are typical of the claims of the Class because all Class members, including Plaintiffs, suffered antitrust injury in the same way as a result of Defendants' conduct, and the claims of each Class member arise out of the same nucleus of operative facts and are based on the same legal theories.

65.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel experienced in class action and antitrust litigation, and Plaintiffs have no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

66.    A class action is superior to any other available methods for the fair and efficient

adjudication of this controversy. Plaintiffs know of no difficulty that will be encountered in the management of the claims advanced by the Class that would preclude class certification.

## VII. ANTICOMPETITIVE EFFECTS OF DEFENDANTS' ILLEGAL CONDUCT

67.    Warner Chilcott and Barr's Agreement not to compete is a naked restraint of trade. On its face it eliminates competition, and it has no plausible procompetitive justification.

68.    The Agreement is anticompetitive pursuant to every relevant legal analysis.

69.    Defendants' conduct had the purpose and effect of unreasonably and illegally restraining trade and preventing competition within the Class Jurisdictions.

70.    Defendants' horizontal agreement not to compete is not ancillary to any procompetitive undertaking: Preventing competition from Barr's generic Ovcon for five years is not subordinate to any procompetitive undertaking, but is rather the primary purpose of the Agreement. Preventing competition from Barr's generic Ovcon for five years is not reasonably necessary to accomplish any undertaking that enhances competition.

71.    Defendants could have accomplished any of the purported competitive benefits of the Agreement by other less-restrictive means that would not have destroyed competition.

72.    As a direct and proximate result of the illegal conduct alleged in this complaint, Plaintiff and the members of the Class were forced to pay more for Ovcon than they otherwise would have paid. Defendants' unlawful conduct deprived Plaintiffs of the benefits of competition that the antitrust laws of the Class Jurisdictions were designed to secure.

## VIII. CLAIM FOR RELIEF

A.    **Violation of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.*, and the Antitrust Laws of the Class Jurisdictions**

73.    Plaintiff repeats each of the foregoing allegations of this Complaint with the same force and effect as if fully set forth herein.

74.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the class members were injured by having paid more for Ovcon than they otherwise would have paid absent Defendants' unlawful conduct.

75.    The Agreement between Warner Chilcott and Barr constitutes a restraint of trade in violation of Tenn. Code Ann. §§ 47-25-101 *et seq.*

76.    The foregoing conduct of Defendants is also in violation of the following antitrust laws of the Class Jurisdictions for the same reasons as alleged in the foregoing paragraphs:

| | |
|---|---|
| Alabama: | Ala. Code §§ 6-5-60 *et seq* |
| Arizona: | Ariz. Rev. Stat. §§ 44-1401 *et seq.* |
| District of Columbia: | D.C. Code Ann § 28-4501 |
| Florida | Fla. Stat. Ann. §§ 501.204(1), *et seq.* |
| Hawaii: | Hawaii Rev. Stat. §§ 480-1 *et seq* |
| Iowa: | Iowa Code Ch. 553, §§ 553.1 *et seq* |
| Kansas: | Kan. Stat. Ann. §§ 50-101 *et seq* and §§ 50-801 |
| Maine: | Me. Rev. Stat. Ann. Tit. 10, §§ 1101, 1104 |
| Massachusetts | Mass. Gen. L. c. 93A |
| Michigan: | Mich. Comp. Laws Ann. §§ 445.771 *et seq.* |
| Minnesota: | Minn. Code Ann. §§ 325D.49-325D.66 |
| Mississippi: | Miss. Code Ann. §§ 75-24-1 *et seq* |
| Nebraska: | Nebraska Rev. Stat. §§ 59-801 *et seq* |
| Nevada: | Nev. Rev. Stat. Chapter 598A |
| New Mexico: | N.M. Stat. Ann. §§ 57-1-3 |
| New York: | N.Y. Gen. Bus. Law §§ 340 |

| North Carolina: | N.C. Gen. Stat. §§ 75-1, 75-1.1, 75-2 |
| North Dakota: | N.D. Cent. Code §§ 51-08.1-08 |
| South Carolina: | S.C. Code Ann. §§ 39-3-10 |
| South Dakota: | S.D. Codified Laws Ann. §§ 37-1-14.3 and 37-1-33 |
| Vermont | § 2451, *et seq.* and § 2465 of Vt. Stat. Ann., tit. 9 |
| West Virginia: | W. Va. Code §§ 47-18-9 |
| Wisconsin: | Wisc. Stat. Ann. §§ 133.03(1), 133.04, 133.16, 133.17 and 133.18 |

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of itself, the class members and all others similarly situated, requests that it and the members of the class have judgment entered in their favor and against Defendants, as follows.

1.    That summons be issued and that Defendants be duly served with a copy of this Complaint and required to answer same, and that this Court decree and enter judgment.

2.    That the Court certify the class proposed.

4.    That the Court decree that Defendants have violated the Tennessee Trade Practices Act, T.C.A. §47-25-101 et seq. and the antitrust laws of the other Class Jurisdictions, and award Plaintiff and the class members appropriate relief, including full consideration under §47-25-106 of the Tennessee Trade Practices Act.

5.    That the Court award Plaintiff its costs, plus reasonable attorneys' fees.

6.    That the Court order such other, further and general relief as is just and proper.

Respectfully submitted, this _____ day of _____, 2005.


      _s/ Gordon Ball_____
Gordon Ball
Ball & Scott
Suite 601, 550 Main Ave.
Knoxville, TN 37902
865.525.7028

Krishna B. Narine
Law Office of Krishna B. Narine
7839 Montgomery Ave.
Elkins Park, Pennsylvania 19027
Tel: 215.771.4988
Fax:215.782.3241

Isaac L. Diel
Law Office of Isaac L. Diel
135 Oak Street
Bonner Springs, Kansas 66012
Tel: 913.383.8711
Fax:913.422-0307

Daniel K. Karon
Goldman, Scarlato & Karon PC
55 Public Square, Suite 1500
Cleveland, Ohio 44113_1998
Tel: 216.622.1851
Fax:216.622.1852

Case 2:05-cv-00316   Document 1-2   Filed 11/30/2005   Page 1 of 1

✎JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jabo's Pharmacy, Inc.

**(b)** County of Residence of First Listed Plaintiff   Cocke County, TN
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gordon Ball, Ball & Scott, 550 W. Main Ave., Knoxville, TN 37902

## DEFENDANTS

Warner Chilcott Holdings Company III, Ltd., et al

County of Residence of First Listed Defendant   Rockaway, NJ
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☐ 2  U.S. Government
       Defendant

☐ 3  Federal Question
       (U.S. Government Not a Party)

☒ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☒ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice) | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
antitrust class action

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____                SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

Received
DEC - 6 2005
Legal Dept.

Valley Wholesale Drug Company, Inc.
1401 W. Fremont Street
Stockton, California 95203-2627, individually and
on behalf of all others similarly situated

**SUMMONS IN A CIVIL CASE**

V.

Warner Chilcott (US) Inc.
100 Enterprise Drive
Rockaway, New Jersey 07866

CASE NUMBER  1:05CV02321

CASE

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Antitrust

DATE STAMP: 12/●●/2005

TO: (Name and address of Defendant)

Warner Chilcott (US) Inc.
100 Enterprise Drive
Rockaway, New Jersey 07866

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

William A. Isaacson, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Suite 800
Washington, DC 20015
Tel: 202-237-2727

an answer to the complaint which is served on you with this summons, within ___20___ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY M. MAYER-WHITTINGTON
CLERK

DEC 02 2005
DATE

(By) DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk of Court

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE A UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in the delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to trial of your case by a United States Magistrate Judge. By statute, 28 USC § 636(c), Fed.R.Civ.P. 73 and Local Civil Rule 73.1, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

## WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Civil Rule 16.3 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Counsel for the plaintiff has been furnished a copy of the "Consent to Proceed Before a United States Magistrate Judge for all Purposes" form. If and when the form is executed, your response should be made to the Clerk of the United States District Court only.

## WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned to all purposes to a Magistrate Judge.

CO-942A
Rev. 7/99

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

# INITIAL ELECTRONIC CASE FILING
# ORDER

Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers. Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. Regardless of what option, counsel chooses the complaint/notice of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- All subsequent filings <u>must</u> be made electronically.

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.



KOLLAR-KOTELLY, J.C.K.K.

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### ELECTRONIC CASE FILES
### Attorney/Participant Registration Form

## LIVE SYSTEM

This form shall be used to register for an account on the Court's Electronic Case Files (ECF) system and to subscribe to the ECF EMail (Listserver) notification service. Registered attorneys and other participants will have privileges both to electronically submit documents, and to view and retrieve electronic docket sheets and documents for all cases assigned to the Electronic Case Files system. Listserver subscribers receive email messages whenever the Court wishes to electronically notify ECF registrants of pertinent ECF information.

The following information is required for registration:

First Name/Middle Initial/Last Name　_____

Last four digits of Social Security Number　_____

DC Bar ID#.　_____

Firm Name　_____

Firm Address　_____

Voice Phone Number　_____

FAX Phone Number　_____

Internet E-Mail Address　_____

By submitting this registration form, the undersigned agrees to abide by the following rules:

1.　This system is for use only in cases permitted by the **U.S. District Court for the District of Columbia**. It may be used to file and view electronic documents, docket sheets, and notices. Please visit the Court's ECF Internet, www.dcd.uscourts.gov, website to schedule training.

2.　Pursuant to Federal Rule of Civil Procedure 11, every pleading, motion, and other paper (except list, schedules, statements or amendments thereto) shall be signed by at least one attorney of record or, if the party is not represented by an attorney, all papers shall be signed by the party. An attorney's/participant's password issued by the court

combined with the user's identification, serves as and constitutes the attorney's/participant's signature. Therefore, an attorney/participant must protect and secure the password issued by the court. If there is any reason to suspect the password has been compromised in any way, it is the duty and responsibility of the attorney/participant to immediately notify the court. This should include the resignation or reassignment of the person with authority to use the password. The Court will immediately delete that password from the electronic filing system and issue a new password.

3.  An attorney's/participant's registration will not waive conventional service of a summons and complaint, subpoena, or other judicial process; submit the client to the jurisdiction of the Court; or operate as a consent to accept service of pleadings, documents, and orders in actions in which such attorney/participant has not entered an appearance. An attorney's/participant's registration will constitute a waiver in law only of conventional service of other non-process pleadings, documents, and orders in the case. The attorney/participant agrees to accept, on behalf of the client, service of notice of the electronic filing by hand, facsimile or authorized e-mail.

4.  Upon receipt of your login and password, you are strongly encouraged to change your password, which may be done through the Utilities function, to a name easily recalled. **You may be subjected to a fee, should the Clerk's Office have to create a new password for you, or alternatively, you may be required to appear in person to receive your new password.**

5.  Attorneys who are active members of the bar of this Court, or government attorneys who are employed or retained by the United States, or who have been permitted to proceed *pro hac vice*, must file pleadings electronically.

Please return this form to:          U.S. District Court for the District of Columbia
                                     Attn:  Attorney Admissions
                                     333 Constitution Avenue NW, Room 1825
                                     Washington, DC  20001

Or FAX to:                           Peggy Trainum
                                     U.S. District Court for the District of Columbia
                                     (202) 354-3023

Applicant's Signature

| Full Last Name | Initial of First Name | Last 4 Digits SS# |
| --- | --- | --- |